**YANNI LAW, APC**
John C. Bohren (California State Bar No. 295292)
145 S Spring St; #850
Los Angeles, CA 90012
Telephone: (619) 433-2803
Fax: (800) 867-6779

**POULIN | WILLEY | ANASTOPOULO, LLC**
Andre Bèlanger (*Pro Hac Vice*)
Andre.Belanger@poulinwilley.com
cmad@poulinwilley.com
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DENNIS WALKER, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v<br><br>MAKITA U.S.A., INC.,<br><br>Defendant | **Case No: 2:26-cv-00450-WLH-RAO**<br><br>**SECOND AMEDNED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Dennis Walker, ("Plaintiff") brings this Second Amended Class Action Complaint against Defendant Makita U.S.A., Inc., ( "Defendant" or "Makita") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## PARTIES, JURISDICTION & VENUE

1. Plaintiff Dennis Walker is a resident citizen of the State of Louisiana. Plaintiff is a purchaser of Makita's cordless grease gun ("grease gun") model XPG01Z.

2. Defendant, Makita U.S.A., Inc. is a general stock trading corporation located in California. Takeshi Kawamoto is the Registered Agent who can be served at 14930 Northam Street, La Miranda, California 90638.

3. On Makita's website, it is indicated that Makita U.S.A. operates an extensive distribution network across the United States[1].

4. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendant.

5. This Court has personal jurisdiction over Defendant because its principal place of business is in this District. Defendant has also purposefully availed itself of the laws, rights, and benefits of the State of California.

---

[1] https://www.makitatools.com/company/about-us (last accessed September 18, 2025)

6. Venue is proper under 28 U.S.C §1391 because a Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## FACTUAL ALLEGATIONS

7. Plaintiff alleges the foregoing allegations as if fully setforth herein.

8. Defendant designs, manufactures, markets, distributes and sells consumer tools, including the subject "Grease Guns" that are part of the CPSC September 2025 Recall. Defendant executed, controlled, or orchestrated every aspect of the Product's inception, design, manufacture, importation, packaging, marketing, distribution, and eventual sale of the Grease Gun and Hoses.

9. Plaintiff purchased the Grease Gun, which experienced the defect in the Recall. Namely, the Grease Gun developed a hole, began leaking grease and he could no longer use it for its intended purpose. The defect also exposes Plaintiff to a laceration hazard.

10. When a manufacturer sells a product, it has a duty to ensure that the product functions properly and safely for its advertised use, free from any defects. Upon discovering a defect, a manufacturer must explicitly disclose the defect and take corrective action or cease selling the product. Additionally, when a product manufacturer provides a warranty, it must stand by that warranty. The present class action lawsuit arises from Defendant's breach of these stated duties and obligations.

11. Plaintiff and Class Members (later defined) are consumers of Makita's cordless grease guns and hoses subject to the CPSC recall issued on September 4, 2025, under Recall Notice Number 25-455[2].

---

[2] https://www.cpsc.gov/Recalls/2025/Makita-USA-Inc-Recalls-Cordless-Grease-Guns-and-Grease-Gun-Hoses-Due-to-Laceration-Hazard (last accessed February 26, 2026)

12. On March 12, 2022, Plaintiff purchased a new Makita Grease Gun Model XPG01Z from CPO-outlets for $236.47.

13. Makita markets the particular model purchased by the Plaintiff as being "an ideal cordless solution for the workshop or garage[3]." The model is powered by a lithium-ion battery.

14. On Makita's website they purport having a 3-year limited warranty for lithium-ion tools[4]. The terms of this expressed warranty for workmanship and materials.

15. On September 4, 2025, the CPSC issued a recall for multiple models of their grease guns and hoses. The recalled grease guns were for models XPG01S1; XPG01SR1; and XPG01Z. The recalled hoses were for models 191A79-9; 191A80-4; 191W59-7; and 191W58-9[5].

16. The Recall Notice advised that approximately 63,000 units were subject to recall with prices ranging between $60-$390[6]. The Recall Notice did not breakdown how many of the recalled units were hoses compared to grease guns.

17. According to the CPSC Recall Notice, "[t]he flexible grease gun hose can develop a hole allowing grease to be ejected while using the grease gun, posing a laceration hazard[7]." The notice advises 5 lacerations were reported due to the grease gun hose failing[8].

18. The CPSC Recall Notice advises that the recall remedy is limited to replacement[9].

---

[3] https://www.makitatools.com/products/details/XPG01Z (last accessed February 26, 2026)

[4] https://www.makitatools.com/service/warranty (last accessed February 26, 2026)

[5] https://www.cpsc.gov/Recalls/2025/Makita-USA-Inc-Recalls-Cordless-Grease-Guns-and-Grease-Gun-Hoses-Due-to-Laceration-Hazard (last accessed February 26, 2026)

[6] *Id.*

[7] The flexible grease gun hose can develop a hole allowing grease to be ejected while using the grease gun, posing a laceration hazard.

[8] *Id.*

[9] *Id.*

19. Makita's website describes the hazard as follows: '[t]he flexible grease gun hose can develop a hole allowing grease to be ejected while using the grease gun, posing a laceration hazard[10]." The website further advises that the recall remedy is limited to replacement only[11].

20. "Replacement Only" is an inadequate remedy as there are no assurances that the replaced product would not be subjected to the same or similar defects upon their return.

21. Makita promotes the quality of its brand online by claiming that they are "innovation leaders", have "best in class products" and provide "unmatched quality and durability[12]."

22. Designing and manufacturing a grease gun whose hose can sustain a laceration during ordinary use and pose a safety risk to consumers runs afoul of this quality standard.

## CLASS ACTION ALLEGATIONS

23. Plaintiff alleges the foregoing allegations as if fully setforth herein.

24. Plaintiff brings this action on behalf of himself and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

> **National Class: All persons within the United States who purchased Makita Grease Gun Models XPG01S1; XPG011SR1; XPG01Z or Grease Hose Models 191A79-9; 191A80-4; 191-W59-7; or 191W58-9 during the period within the statute of limitations**.

---

[10] https://www.makitatools.com/company/press-releases/2025/makita-u-s-a-inc-recalls-cordless-grease-guns-and-grease-gun-hoses-due-to-laceration-hazard (last accessed February 26, 2026)

[11] *Id.*

[12] https://www.makitatools.com/company/about-us (last accessed September 18, 2025)

**Louisiana Subclass**: **All persons within Louisiana who purchased Makita Grease Gun Models XPG01S1; XPG011SR1; XPG01Z or Grease Hose Models 191A79-9; 191A80-4; 191-W59-7; or 191W58-9 during the period within the statute of limitations**.

25. This Nationwide Class shall be referred to herein as the "Class." The Louisiana Subclass shall be referred to herein as the "Louisiana Subclass" or the "Subclass". Unless otherwise noted, references to the "Class" will include any "Subclasses".

26. Plaintiff reserves the right to amend the Class and Subclass definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

27. Excluded from the Class and Subclass are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

28. The particular members of the Class and Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from major retail sellers.

29. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

30. The proposed Class is so numerous that the joinder of all members is impracticable.

31. This action has been brought and may be properly maintained on behalf of the

Class proposed herein under Federal Rule of Civil Procedure 23.

32. **Numerosity: Fed. R. Civ. P. 23(a)(1)** – Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown currently, such information is in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process. The CPSC suggests that 62,927 grease guns and hoses are subject to recall. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

33. **Typicality: Fed R. Civ. P. 23(a)(3)** – Plaintiff's claims are typical of the claims of the members of the Class, because, inter alia, all Class Members have been injured through the uniform misconduct described above. Moreover, Plaintiffs' claims are typical of the Class Members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Sub-class.

34. **Adequacy: Fed. R. Civ. P. 23(a)(4)** – Plaintiff will fairly and adequately protect the interest of the members of the Class. Plaintiff and the members of the Class were all consumers of a defective product posing a laceration hazard. Plaintiff will fairly and adequately represent and protect the interest of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no antagonistic interest to those of the Class, and Defendant has no defenses unique to Plaintiffs.

35. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** – A class action is

superior to all other available means for the fair and efficient adjudication of claims of Plaintiff and Class Members. There are questions of law and fact common to all Class Members that predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

36. Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class and Subclass, and other equitable relief on grounds generally applicable to the entire Class and Subclass, to enjoin and prevent Defendant from engaging in the acts described. Unless a Class is certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiff and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these alleged violations, and the members of the Class may continue to be unfairly treated making final injunctive relief appropriate with respect to the Class as a whole.

37. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** – This action

involves questions of law and fact common to the Classes. The common legal and factual questions include, but are not limited to, the following:

a. Whether there is a defect with the grease gun or its hoses that expose consumers to a laceration hazard;

b. Whether Makita breached any express or implied warranties by selling consumers grease guns and/or hoses that expose consumers to laceration hazards.

c. Whether Makita negligently designed or manufactured defective grease guns and hoses.

d. Whether Makita's wrongful retention of Plaintiff and Class Members' payments was either an act of conversion or an act of unjust enrichment, or both;

e. Whether Makita breached its contract with the Plaintiff by failing to refund Plaintiffs' payments upon the announcement of the recall;

f. Whether Makita's retention of Plaintiff and Class Members' payments was a violation of Defendant's duty of good faith and fair dealing;

g. Whether Makita weas unjustly enriched as a result of retaining and refusing to refund Plaintiff and Class Members' payments upon the recall announcement;

h. The proper method or methods by which to measure damages and/or restitution and/or disgorgement;

i. Whether Makita's Recall Remedy is a sufficient means for making Plaintiff and Class Members whole.

j. Whether Plaintiff and the Class are entitled to declaratory and injunctive relief and the nature of that relief.

## CAUSES OF ACTION

## COUNT I

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**(On Behalf of Plaintiff and the National Class)**

38. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

39. **This claim is brought under UCC § 2-314 as adopted and construed by the laws of the States where Nationwide Class members purchased or acquired the Products.** To the extent state law variations are material to liability or remedies—including differences regarding privity, pre-suit notice, and the enforceability of warranty limitations—Plaintiff will seek certification of appropriate **State Subclasses** (or groupings of States with materially similar law) so that the common issues arising from Defendants' uniform conduct and the uniform defect can be adjudicated efficiently and fairly.

40. Makita is a merchant and was at all relevant times involved in the distributing, warranting, and/or selling of the defective Grease Guns and Hoses.

41. The Grease Guns and Hoses are "goods" under the relevant laws, and Defendants knew or had reason to know of the specific use for which the Grease Guns and Hoses, as goods, were purchased.

42. Makita entered into agreements with consumers to sell the Grease Guns and Hoses to be used by Plaintiff and Class Members for personal use.

43. Plaintiff experienced the defect in the Recall, which makes his grease gun unmerchatable.

44. Plaintiff's Grease Gun experienced a leak and is no longer fit for its ordinary purpose.

45. Additionally, Plaintiff is exposed to a larceration hazard because of the defect in his Grease Gun and can no longer use it.

46. The remedy offered in the Recall is not sufficient because there are no assurances that the Replacement will be free from defects and the Grease Gun will be fit for its ordinary purpose.

47. The implied warranty of merchantability included with the sale of each Grease Gun and Hose means that Makita guaranteed that these products would be fit for the ordinary purposes for which grease guns are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff, and the Class Members.

48. Makita breached the implied warranty of merchantability because the Grease Guns and Hoses are not fit for their ordinary purpose of providing grease lubrication to parts and other pieces of equipment as, according to the CPSC Recall Notice and Plaintiff's personal experience, the grease gun hose could fail and can/has caused laceration injuries to users.

49. Defendant impliedly warranted that the Products were of merchantable quality and fit for the ordinary purposes for which such goods are used.

50. The Products were not merchantable and not fit for their ordinary purpose because they contained a uniform defect in the flexible hose assembly that could develop a hole and allow grease to be ejected during intended use, creating an unreasonable safety risk and rendering the Products unfit for ordinary use and failing to meet consumers' reasonable expectations.

51. The defect existed at the time the Products left Defendants' possession and entered the stream of commerce and was present at the time of sale to Plaintiff and the Nationwide Class.

52. Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and sales. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members. Indeed, when one

attempts to buy a product directly from Makita's website, it is provided a list of nearby locations where one could buy their products or given a link to certain authorized dealer websites[13].

53. To the extent any State's law requires privity for an implied warranty claim against a manufacturer or upstream seller, Plaintiff and relevant State Subclass members satisfy such requirements, including because the Products were sold through Defendants' authorized distribution channels, Defendants were integral participants in the marketing and sale of the Products, and Defendants directly extended warranty obligations and recall remedies to consumers as the intended beneficiaries of the transaction. Alternatively, Plaintiff seeks certification of State Subclasses for those jurisdictions recognizing privity exceptions or third-party beneficiary theories applicable to consumer goods sold through authorized retailers.

54. Defendants received timely notice of the defect and breach of the implied warranty, including: through internal data, consumer complaints, warranty claims, and the recall process.

55. In addition, Plaintiff and Nationwide Class members provided notice and/or sought warranty and recall relief as alleged in this Complaint. To the extent any State's law requires additional pre-suit notice, Defendants were afforded a reasonable opportunity to cure through their administration of warranty/recall remedies but failed to provide relief sufficient to cure the economic harm caused by the defect.

[13] https://www.makitatools.com/products/buy-local/GBU01M1?promo (last accessed February 26, 2026)

56. Had Plaintiff and Class Members, known about this defect, they would either have not purchased them and, instead, would have purchased a similar product from a competitor or they would have paid less.

57. Any purported disclaimers, limitations of warranties, or limitations of remedies are unenforceable as to Plaintiff and the Nationwide Class and/or are ineffective to the extent they conflict with applicable State law, were not conspicuous, were not meaningfully disclosed prior to sale, and/or cannot negate the implied warranty of merchantability for consumer goods sold in commerce.

58. As a direct and proximate result of Defendants' breach, Plaintiff and the Nationwide Class suffered damages, including overpayment/price premium damages, diminished value, and reasonable out-of-pocket costs associated with ownership of a defective and recalled product and efforts to obtain a cure.

59. Plaintiff seeks all relief available under the applicable laws of the States for the Nationwide Class and any certified State Subclasses, including damages and, where permitted, incidental and consequential damages, plus restitutionary relief as appropriate.

**COUNT II**

**UNJUST ENRICHMENT**

**(On Behalf of the National Class)**

60. Plaintiff incorporates by reference and realleges all preceding allegations as if fully set forth herein.

61. This claim is plead **in the alternative** to Plaintiff's and the Nationwide Class's legal and warranty-based claims, and only **to the extent** the law of the State in which each

Nationwide Class member purchased or acquired the Products recognizes unjust enrichment and/or restitution as an independent cause of action or as a basis for equitable recovery.

62. In California, there is no independent cause of action for unjust enrichment. However, federal district courts permit plaintiffs to plead quasi-contractual unjust enrichment or restitution claims in the alternative to breach of contract claims. *Barrales v New Chapter, Inc.* 2025 U.S. Dist. LEXIS 106396 at *19 (C.D. Cal. June 4, 2025)(citing *Etminan v. Alphatec Spine, Inc.,* 2024 U.S. Dist. LEXIS 153070, 2024 WL 3941832, at *3 (S.D. Cal. Aug. 23, 2024 and *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762 (9th Cir. 2015)).

63. Defendant has been **unjustly enriched** by receiving and retaining benefits from Plaintiff and the Nationwide Class in the form of monies paid for the Products and revenue derived from the sale of the Products nationwide.

64. Plaintiff and the Nationwide Class conferred these benefits on Defendant directly and/or indirectly through Defendant's authorized distribution channels in exchange for Products that were represented as suitable for their ordinary purpose but were, in fact, defective and/or worth materially less than the price paid.

65. Defendant's retention of these benefits is inequitable and unjust because Defendant sold defective Products and failed to provide relief sufficient to eliminate the economic injury caused by the defect, including overpayment/price premium damages, diminished value, and reasonable out-of-pocket expenses associated with ownership of a defective and recalled product and efforts to obtain a cure.

66. Plaintiff and the Nationwide Class have suffered an ascertainable loss and corresponding impoverishment as a result of Defendants' unjust retention of the benefits described above.

67. To the extent the laws of the several States impose materially different standards affecting this claim—including without limitation differences concerning whether a direct benefit is required, the effect of contractual or warranty remedies on restitution, and the forms of equitable relief available—Plaintiff will seek certification of appropriate **State Subclasses** (or groupings of States with materially similar law) so that the common issues arising from Defendants' uniform conduct and the uniform defect may be adjudicated efficiently and fairly.

68. Plaintiff, on behalf of himself and the Nationwide Class (and any certified State Subclasses), seeks **restitution and disgorgement** of all monies unjustly retained by Defendants, together with pre- and post-judgment interest and such other equitable relief as the Court deems just and proper under applicable State law.

**COUNT III**

**REDHIBITION (La Civ. Code 2520 et seq.)**

**(On Behalf of the Louisiana Subclass)**

69. Plaintiff incorporates by reference and realleges all preceding allegations as if fully set forth herein.

70. Plaintiff and members of the Louisiana Subclass purchased Makita cordless grease guns and/or grease gun hoses, including the Makita XPG01Z cordless grease gun and related flexible grease gun hose.

71. Plaintiff purchased a Makita XPG01Z cordless grease gun on or about March 12, 2022, from CPO-Outlets for approximately $236.47.

72. Plaintiff's Product bears model number and falls within the model and serial-number population identified in Makita U.S.A.'s CPSC recall concerning Makita cordless grease guns and grease gun hoses.

73. The recalled Products include Makita Professional Cordless Grease Guns, including model XPG01Z, and related Makita grease gun hoses.

74. The Products contained a hidden redhibitory defect at the time of sale and at the time they left the control of Defendant and/or the Makita manufacturing, importation, distribution, and warranty stream.

75. The redhibitory defect consists of a latent defect in the flexible grease gun hose assembly. During ordinary, intended, and reasonably foreseeable use, the hose can develop a hole, allowing pressurized grease to eject from the hose and creating a laceration hazard.

76. The defect was not apparent to Plaintiff or reasonable consumers at the time of purchase. An ordinary purchaser could not discover through reasonable inspection that the hose assembly was susceptible to failure under ordinary operating pressures and ordinary use.

77. The defect rendered the Products useless, unsafe, or so inconvenient and imperfect that Plaintiff and members of the Louisiana Subclass would not have purchased the Products had they known of the defect.

78. Alternatively, even if the Products are not deemed totally useless, the defect diminished the usefulness and value of the Products such that Plaintiff and members of the Louisiana Subclass would have paid materially less had the defect been disclosed.

79. Plaintiff and members of the Louisiana Subclass purchased the Products for their ordinary and intended purpose: to safely dispense grease under pressure. A product containing a latent hose defect that can allow pressurized grease to eject and injure the user is not reasonably fit for that ordinary and intended use.

80. Plaintiff suffered injury at the time of sale because he paid the purchase price for a safe, non-defective, ordinary-use Makita grease gun but received a Product containing a latent safety defect that materially diminished its value and usefulness.

81. Defendant Makita U.S.A. is liable in redhibition as a manufacturer, statutory manufacturer, warrantor, importer, distributor, marketer, seller within the chain of sale, and/or entity that placed the Makita-branded Products into the United States stream of commerce.

82. Defendant is a manufacturer under Louisiana product-defect law, including La. R.S. § 9:2800.53, because Defendant labeled and held the Products out as Makita products; imported, distributed, marketed, warranted, serviced, and recalled the Products in the United States; administered the Product warranty and recall remedy; and acted as the United States Makita entity responsible for the Products.

83. The Products were manufactured in China by a related Makita entity. Defense counsel conceded at hearing that the Chinese manufacturing entity is related to Defendant Makita U.S.A.

84. Defendant is also a statutory manufacturer because it imported and distributed for resale a product manufactured by an alien manufacturer and, based on common Makita ownership, control, branding, warranty administration, recall administration, and other relevant facts, acted as the United States affiliate, representative, and/or alter ego of the related foreign Makita manufacturing entity.

85. Defendant is not a passive downstream seller. Defendant controlled and administered the United States warranty, recall communications, replacement remedy, and post-sale defect response for the Makita-branded Products.

86. Defendant knew, had reason to know, and/or is deemed to know of the redhibitory defect. As a manufacturer and statutory manufacturer, Defendant is deemed to know of defects in the Products it placed into commerce.

87. Defendant also had actual knowledge of the defect no later than its investigation, communications with the CPSC, announcement of the recall, and administration of the recall remedy.

88. To the extent pre-suit notice was required, notice was excused because Defendant had actual knowledge of the defect and/or is deemed to know of the defect as a manufacturer.

89. Alternatively, Defendant received notice of the defect through the recall process, Plaintiff's communications or claim, class member complaints, and this action, and Defendant had an opportunity to provide a legally sufficient cure.

90. Defendant has offered a replacement hose through the recall. That replacement-only remedy does not moot, bar, or fully cure Plaintiff's redhibition claim.

91. The replacement-only recall remedy is, at most, a prospective attempt to replace one component of the defective Product. It does not rescind the sale, return the purchase price with interest, reduce the purchase price, compensate for overpayment, reimburse reasonable expenses, compensate for diminished value, compensate for loss of use or inconvenience, provide damages, or pay attorney's fees available under Louisiana redhibition law.

92. Plaintiff and members of the Louisiana Subclass do not seek relief merely because a recall was issued. They seek relief because they purchased Products that contained a latent redhibitory defect at the time of sale, were worth less than the price paid, were unsafe or materially less useful for ordinary use, and were later subject to a recall confirming the nature and scope of the defect.

93. Plaintiff and members of the Louisiana Subclass would not have purchased the Products, or would have paid materially less for them, had they known that the Products contained a latent hose defect that could allow pressurized grease to eject during ordinary use and create a laceration hazard.

94. As a direct and proximate result of the redhibitory defect, Plaintiff and members of the Louisiana Subclass suffered damages and economic injury, including overpayment, diminished value, loss of use, inconvenience, reasonable expenses, and other damages recoverable under Louisiana law.

95. Plaintiff and members of the Louisiana Subclass seek rescission of the sale and return of the purchase price with interest from the time it was paid.

96. In the alternative, Plaintiff and members of the Louisiana Subclass seek a reduction in the purchase price in an amount reflecting the difference between the price paid and the value of the Products had the latent defect and recall-related safety risk been known at the time of sale.

97. Plaintiff and members of the Louisiana Subclass also seek reimbursement of reasonable expenses occasioned by the sale and preservation of the Products, damages, attorney's fees, costs, pre- and post-judgment interest, and all other relief available under Louisiana Civil Code articles 2520 through 2548 and applicable law.

98. Plaintiff does not seek double recovery. Any replacement hose or other benefit actually received may be considered, if appropriate, as an offset or remedy issue after factual development, but it does not defeat the redhibition claim at the pleading stage.

**COUNT IV**

**ENRICHMENT WITHOUT CAUSE (La Civ. Code 2298 et seq.)**

**(On Behalf of the Louisiana Subclass)**

99. Plaintiff incorporates the previous paragraphs as if fully set forth herein.

100. This claim is pled strictly in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

101. Plaintiff asserts this claim only to the extent the Court determines that Louisiana redhibition or any other law provides Plaintiff and the Louisiana Subclass no remedy against Defendant Makita U.S.A. for the impoverishment alleged herein.

102. Plaintiff does not seek double recovery. If Plaintiff or the Louisiana Subclass recover under redhibitionor any other legal remedy for the same injury, this alternative claim shall not provide a duplicative recovery.

103. Defendant has been enriched by receiving and retaining revenue, profits, sale proceeds, distribution benefits, warranty-related benefits, goodwill, market share, and other economic benefits from the sale of the Makita cordless grease guns and related hoses to Louisiana purchasers.

104. Defendant's enrichment includes benefits received from placing Makita-branded Products into the United States stream of commerce through its distribution network and from retaining the economic benefits associated with sales of Products that contained a latent redhibitory defect.

105. Plaintiff and members of the Louisiana Subclass were impoverished because they paid money for Products that contained a latent hose defect, were subject to recall, were unsafe or materially less useful for their ordinary purpose, and were worth materially less than the prices paid.

106. Plaintiff's and the Louisiana Subclass' impoverishment includes overpayment, diminished value, loss of use, inconvenience, and reasonable out-of-pocket expenses associated with owning defective and recalled Products and attempting to obtain an effective remedy.

107. There is a direct connection between Defendant's enrichment and Plaintiff's and the Louisiana Subclass's impoverishment. Plaintiff and the Louisiana Subclass paid for Makita-branded Products placed into commerce by Defendant, and the economic benefits of those sales flowed to Defendant through the Makita marketing, distribution, warranty, and recall system.

108. Defendant's enrichment came at Plaintiff's and the Louisiana Subclass's expense because Defendant retained the economic benefit of selling Products that were not worth the price paid and did not provide the safe, non-defective, ordinary-use grease guns and hoses for which Louisiana purchasers paid.

109. To the extent Defendant contends that it is not a seller, manufacturer, statutory manufacturer, warrantor, contracting party, or other entity legally responsible under redhibition, warranty law, the LPLA, contract law, or other Louisiana law, there is no valid juridical act or other legal cause that permits Defendant to retain the portion of the purchase-price benefit attributable to the latent defect, recall, diminished value, and loss of use.

110. To the extent Defendant contends that Plaintiff and the Louisiana Subclass lack any direct legal remedy against Defendant for the sale of the defective Products, Defendant's retention of the defect-attributable economic benefits is without cause.

111. Defendant's replacement-only recall remedy does not eliminate the enrichment or impoverishment alleged herein. The recall remedy may offer a replacement hose prospectively, but it does not return the purchase price, compensate for overpayment, reimburse reasonable expenses, compensate for diminished value or loss of use, or otherwise restore the economic

position Plaintiff and the Louisiana Subclass would have occupied had they not purchased defective and recalled Products.

112. Equity and good conscience do not permit Defendant to retain the economic benefits obtained from the sale of defective and recalled Products while simultaneously denying that Plaintiff and the Louisiana Subclass have any legal remedy against Defendant.

113. The amount recoverable under this claim is limited by Louisiana Civil Code article 2298 to the lesser of Defendant's enrichment or Plaintiff's and the Louisiana Subclass's impoverishment, measured as of the time suit was brought or, according to the circumstances, as of the time judgment is rendered.

114. Plaintiff and members of the Louisiana Subclass seek restitution, compensation, interest, costs, and all other relief available under Louisiana Civil Code article 2298, but only to the extent no other legal remedy is available against Defendant for the impoverishment alleged herein

## .**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Class and Subclass alleged herein, respectfully request that the Court enter judgment in their favor and against Makita as follows:

A. For an order certifying the Class and naming Plaintiff as the representative for the Class and Plaintiffs' attorneys as Class Counsel;

B. For an order declaring that Defendant's conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined

by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper;

H. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I. For an order providing for all other such equitable relief as may be just and proper.

Plaintiffs hereby demand a trial by jury on all issues so triable.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

DATE: June 26, 2026

By: */s/ John C. Bohren*

**YANNI LAW APC**
John C. Bohren (California State Bar No. 298476)
145 S Spring St; #850 Los Angeles, CA 90012
Telephone: (619) 433-2803
Fax: (800) 867-6779
Email:Yanni@bohrenlaw.com

Andre R. Belanger (Pro Hac Vice)
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: andre.belanger@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiff & Proposed Class*